J-A16045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN C. FAHRINGER AND ANDREA L. FAHRINGER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NANCY M. VASBINDER | : | |
| | : | No. 1136 WDA 2023 |
| Appellant | : | |

Appeal from the Order Entered November 20, 2023
In the Court of Common Pleas of Armstrong County Civil Division at
No(s):  2022-00143

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: OCTOBER 9, 2024**

Nancy M. Vasbinder appeals from the verdict ordering specific performance of a real estate contract and denying her claims for monetary damages and ejectment. She claims the court erred in not awarding her reimbursement for taxes and a money order, and in granting specific performance. We affirm.

In 2003, Vasbinder and John C. and Andrea L. Fahringer entered into a contract for the sale of real estate. In February 2022, the Fahringers initiated this action to enforce the agreement seeking specific performance. They also asserted an unfair trade practices and consumer protection law ("UTPCPL") claim. Vasbinder filed a breach of contract counterclaim seeking alleged unpaid payments due under the agreement, together with late fees, taxes, interest, and other charges, and seeking ejectment.

The court held a non-jury trial in August 2022, where Mr. Fahringer and Mrs. Vasbinder testified. The Fahringers admitted 15 exhibits, including money order receipts to show payments made to Vasbinder. Vasbinder submitted two exhibits showing handwritten calculations of payments made, payments not made, and late fees, interests, etc.

The trial court summarized the facts as follows:

> The sales agreement identified as Exhibit 1 is an enforceable written contract, stating adequate consideration, and executed by all of the parties. The agreement was typed by Mrs. Vasbinder. The agreement provides for a purchase price of $ 45,000.00, with $5,000.00 to be paid immediately, and the balance of $40,000.00 to be paid over an unspecified number of years in monthly payments of $350.00 with 8% interest.
>
> In addition, the agreement provides for an additional $50.00 payment each month for real estate taxes. Mrs. Vasbinder testified that the $50.00 was a figure that she used for the agreement, but that it did not actually correspond to the actual real estate tax amounts for 2003.
>
> Mrs. Vasbinder went to her bank and had the bank calculate an amortization table for 8% of $40,000.00. Based on that calculation, the Fahringers actually paid $351.79 each month. At some point, Mrs. Vasbinder asked the Fahringers to pay more than $50.00 per month toward taxes, and so they agreed to pay a higher amount, and eventually agreed to make ten monthly tax payments, so that Mrs. Vasbinder could pay the taxes early and get the benefit of a 2% discount.

Trial Court Opinion, filed Aug. 22, 2023, at 1-2 (footnotes omitted). The trial court noted that neither party had a complete record of the payments made or received, but it made the following findings based on the evidence:

A. 2003 - 2013

Mrs. Vasbinder prepared annual summary reports for 2011, 2012, and 2013. Mrs. Vasbinder's reports show that for each of those years, the Fahringers paid $4,221.48 — 12 full payments of $351.79. These reports include ending balances for each of those years: $27,352.56; $ 25,249.14; and $22,964.83. Those ending balances track very closely with what the balances should be at the end of 2011, 2012, and 2013. None of Mrs. Vasbinder's reports indicate any past due amounts or late fees.

With respect to real estate tax payments, Mrs. Vasbinder's reports show that the Fahringers paid $801.00 in 2011, $800.00 in 2012, and $850.00 in 2013 toward taxes, insurance, and "costs & handling." The contract only required the Fahringers to pay $600.00 annually toward taxes.

Based upon this evidence, the [c]ourt finds that from 2003-2013 the Fahringers had fully performed all of their obligations under the contract. In fact, they were paying more than the contract required, at least in 2011-2013.

### B. 2015 - 2021

For the years 2015-2021, the Fahringers offered money order receipts showing payments toward the principal balance and toward taxes. Mr. Fahringer testified that there were a few receipts that were lost, and so the exhibits are not complete. Based upon the receipts that were offered into evidence, the [c]ourt finds that the Fahringers made at least the following payments:

| Principal | Balance | Taxes |
|---|---|---|
| 2015: | $3,869.69 | $805.00 |
| 2016: | $3,869.69 | $1,015.00 |
| 2017: | $4,029.69 (includes 8 late fees) | $670.00 |
| 2018: | $3,246.11 (includes 4 late fees) | $855.00 |
| 2019: | $3,617.90 (includes 5 late fees) | $950.00 |
| 2020: | $2,814.32 | $855.00 |
| 2021: | $700.59 | |

> Considering the very consistent pattern of payments, the Court finds Mr. Fahringer to be credible when he testified that there were some money order receipts that were lost and not included in the exhibits. Even if, for the sake of argument, a few principal payments were missed, the Fahringers paid Mrs. Vasbinder more than the required $600.00 each year toward taxes.

*Id.* at 3-4 (footnotes omitted). The trial court found in favor of the Fahringers on their count for specific performance of the contract and on Vasbinder's counterclaim. It found in favor of Vasbinder on the Fahringer's UTPCPL claim.

Vasbinder filed a motion for reconsideration, which the trial court denied.[1] She filed a notice of appeal and raises the following issues:

> I. Did the trial court err in not awarding [Vasbinder] reimbursement for taxes paid during the period of litigation?

_____

[1] This Court issued a rule to show cause why the appeal should not be dismissed due to waiver, noting the docket did not show the filing of post-trial motions. We further noted the Prothonotary had not entered judgment.

Vasbinder then filed in the trial court a *praecipe* for entry of judgment. She further argued that her motion for reconsideration satisfied the post-trial motions requirement, as it alleged sufficient trial court error to justify reversal. We agree. This Court has held that motions labeled something other than a post-trial motion can substitute for a post-trial motion where the motion intends to perform the same function as a post-trial motion. ***See, e.g., De Lage Landen Fin. Servs., Inc. v. Rozentsvit***, 939 A.2d 915, 923 (Pa.Super. 2007); ***see also Bennett v. Rose***, 183 A.3d 498, 503 (Pa.Cmwlth. 2018) (holding that a motion for reconsideration constituted a post-trial motion because motion "provided specific allegations of error on the part of the trial court which allegedly warranted a reversal"). Here, in her motion to reconsider, Vasbinder alleged the evidence did not support the trial court's determinations in the case, the court erred in not reimbursing her for taxes paid on the property, in not reimbursing her for an undeposited payment, and in not awarding other money due under the counterclaim. Such claims satisfy the post-trial motion requirement.

II. Did the trial court err in not awarding [Vasbinder] reimbursement for a money order not cashed pending litigation?

III. Did the trial court otherwise err in denying the defendant's counterclaim for monies owed under the contract, and therefore also in granting specific performance to [the Fahringers]?

Vasbinder's Br. at 4.

In an appeal from a verdict in a non-jury trial, "[w]e must determine whether the findings of the trial court are supported by competent evidence and whether the trial [court] committed error in the application of law." ***Odedeyi v. Wells Fargo Bank***, 319 A.3d 610, 612 (Pa.Super. 2024) (quoting ***Davis ex rel. Davis v. Gov't Employees Ins. Co.***, 775 A.2d 871, 783 (Pa.Super. 2001)). The "findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion." ***Id.*** (citation omitted). "Our scope of review for questions of law is plenary." ***Id.***

We will review Vasbinder's claims out of order, for ease of discussion. In her final issue, Vasbinder argues that the trial court erred in finding the Fahringers had fulfilled the terms of the agreement. She claims she still was owed money due under the agreement. She maintains that the agreement was not for a certain number of payments but rather was for payments being made in a certain amount, until the principal in the amount of $40,000.00 was paid with 8% interest. She maintains that is why her "calculations concerning interest on payments [are] critical." Vasbinder's Br. at 12. She maintains the amount of interest due would vary by month and would depend on whether

the payments were made by the first of the month, as an untimely payment would earn interest until received. She maintains that she kept track of when the payments were made and calculated the allocation of each payment for principal and interest based on the date received. She concludes that "her testimony that monies were still owed because payments had not been made on the exact due date is credible." *Id.* at 13. She maintains that "any legal conclusion that ignores this fact is not supported by substantial evidence and should be reversed." *Id.*

The trial court concluded the contract did not require the payment of interest on late payments, only a $20.00 late fee, which the Fahringers always paid if more than five days late, and the contract did not provide for any other handling fees or costs:

> Mrs. Vasbinder has filed a counterclaim against the Fahringers for unpaid payments, late fees, taxes and interest totaling $41,221.09. In support of this, she has prepared a ledger showing regular payments, tax payments, late fees, and for some years, interest. These ledger sheets are for the years 2018-2021. Mrs. Vasbinder testified that she created these ledger pages only after receiving the Fahringer's exhibits.
>
> The contract does not provide for the payment of interest on late payments, just late fees for payments made more than five days after they were due. Upon careful review of the dates on the money order receipts for 2018-2021, and the amounts paid on each money order, the Court finds that each receipt that was paid more than five days late includes an additional $20.00 in the payment.
>
> Likewise, the contract does not provide for any other costs or handling fees. To the extent that the Fahringers paid any additional money, the contract did not require them to do so.

> For these reasons, the Court finds that Mrs. Vasbinder has not proven that the Fahringers missed any payments, or that they owed more than what they paid toward real estate taxes. Although the record of payments is not complete, there is no evidence of late payments that have not already been paid.

Trial Ct. Op. at 5-6 (footnotes omitted).

The record supports the court's factual findings and it was not error to conclude the Fahringers fulfilled their contract obligations. This claim fails.

In her first issue, Vasbinder asserts that the court erred in not ordering the Fahringers to reimburse her for taxes paid pending litigation. She relies on her testimony that she made real estate tax payments during the litigation, and claims there was no conflicting evidence presented. She argues there was no legal reason to deny reimbursement.

The court found that the Fahringers made all payments agreed to under the contract, and that Vasbinder did not prove they owed more than they paid toward real estate taxes. In fact, the court concluded "the Fahringers paid Mrs. Vasbinder more than the required $600.00 each year toward taxes." Trial Ct. Op. at 4. The record supports the court's factual findings and it was not error to conclude Vasbinder did not prove the Fahringers owed additional taxes.

Vasbinder next claims that the court erred in not ordering the Fahringers to reimburse her for an uncashed money order. She argues that she did not deposit a money order given to her by the Fahringers because it was marked as "payment in full." Vasbinder's Br. at 11. She claims there was no evidence to dispute that she had not cashed the money order, and claims that it was

- 7 -

therefore error to not order reimbursement. She notes that the trial court found that she had not requested this relief, but argues that she requested all money owed to her, and her calculations included the uncashed money order. She argues that she did not deposit the money order "as it probably would have prevented her from raising the lack of payment as an issue." ***Id.***

The trial court concluded Vasbinder had not pleaded the undeposited money order, and even if she had, her refusal to deposit it did not make the Fahringers liable, particularly as she acknowledged she still had the uncashed money order:

> One matter not discussed in my opinion is [Vasbinder's] allegation of error for not awarding her $ 348.80 for a single money order payment from February 2021. This was a money order that was delivered to [Vasbinder], but which was never deposited by her because [the Fahringers] had written the words "paid in full" on the back of the money order.
>
> This item of alleged damages is not specifically plead in the counterclaim. Even if it were, [Vasbinder's] refusal to deposit a payment does not make [Fahringers] liable for nonpayment. [Vasbinder] acknowledged that she has the undeposited money order to this day.

Trial Ct. Op., Oct. 18, 2023, at 1.

This was not error. Vasbinder's counterclaim did not list the reimbursement of the money order in the counterclaim and, even if it did, it would not be error to not order payment, as the Fahringers tendered the amount due and Vasbinder still possessed the uncashed money order. This claim is meritless.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>10/9/2024</u>